ROCHESTER LAST WORKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6511.   Promulgated September 22, 1927.

Proof insufficient to establish claim for deductions from gross income for the taxable year of bad debts and exhaustion of investment in a leasehold.

*H. Earlton Hanes, Esq.,* for the petitioner.
*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency of $276.32 in income taxes for the year 1920. Two issues are involved: (1) Whether petitioner is entitled to annual deductions from income on account of advances to a certain corporation in which it owned 45 per cent of the capital stock, with which advances said corporation constructed and acquired buildings and equipment used in cutting timber under the provisions of a certain contract, hereinafter mentioned; and (2) whether a certain debt owed to the petitioner was ascertained to be worthless and charged off so as to constitute a deduction from gross income for the year 1920.

### FINDINGS OF FACT.

The petitioner is a New York corporation having its principal office at Rochester, where it is engaged in the manufacture and sale of wooden boot and shoe lasts.

Under date of December 9, 1919, Mobbs & Lewis, Ltd., an English corporation duly organized and incorporated under the laws of Great Britain, having its head office at the town of Kettering, Northampton County, England, entered into a five-year contract with the Nash-waak Pulp & Paper Co., Ltd., a corporation organized under the laws of the Province of New Brunswick, having its head office at Union Point in the Parish of Lancaster, New Brunswick, for the cutting of maple and birch timber to be used in the manufacture of last blocks. By the terms of the contract, Mobbs & Lewis, Ltd., was required in each year after the cutting season of 1919–1920, to cut certain minimum quantities of timber each year and to convert the same into sawn or manufactured lumber or last blocks during the following sawing season ending not later than September 30.

Mobbs, of Mobbs & Lewis, Ltd., and Henry F. Loewer, petitioner's president and manager, had been friends for many years and they decided that the two companies which they represented should be practically equal partners or sharers in a lease of maple and birch timber land in Canada for the production of last blocks, both as to the leasehold and cutting and manufacture of the timber into blocks. In furtherance of this agreement the foregoing described contract for timber was negotiated between Mobbs & Lewis, Ltd., and the Nash-waak Pulp & Paper Co., the owner of the timber and timber land involved. By the terms of the contract Mobbs & Lewis, Ltd., had the privilege of renewal at the end of the term. The contract describes the land, provides in some detail as to the method to be used in the cutting of timber, requires that the owner with the approval of the purchaser shall lay off a certain tract or acreage each year and that the purchaser shall cut at least 3,000,000 superficial feet of sawed timber and last blocks each year for which it shall pay the owner $5 per thousand superficial feet. There is no language in the contract indicating any interest of the petitioner therein.

The contract of December 9, 1919, contains the following pertinent clauses:

(c) At the expiration of four years from the date hereof and within three months thereafter the Nashwaak Company will state a rate of stumpage to be charged during a further or second term of five years to commence at the expiration of the first term of five years hereby agreed upon and it shall then be at the option and election of the said Mobbs & Lewis within three months thereafter by written notice thereof executed by said Mobbs & Lewis under their corporate seal and mailed postpaid and registered duly addressed to the Nashwaak Company to accept the rate of stumpage so stated by the said Nashwaak Company for the said second period of five years. If such rate of

stumpage shall be so accepted by Mobbs & Lewis within said three months then this agreement shall be extended and be in force for said second term of five years next ensuing the term hereby granted without any change except that the stumpage during said second term shall be at the rate so stated and accepted. If, however, said rate so stated shall not be so accepted by said Mobbs & Lewis within said three months then this agreement and all rights to cut logs given hereunder shall at the end of said first period of five years end and terminate and cease to be of any force or effect so far as cutting logs is concerned but shall during the then ensuing sawing season continue in force in all other respects to permit of the sawing of all logs theretofore cut and to preserve the lien of the Nashwaak Company until all stumpage and interest if any shall have been fully paid. Provided however that in the case of this agreement not being continued for a second period under above option nevertheless the said Mobbs & Lewis shall have the right to store and warehouse on the permitted section or sections sawn or manufactured lumber for a period of twelve months next after the expiration of the first term of five years in order to season and remove such sawn and manufactured lumber.

*        *        *        *        *        *        *

(i) That they will on their own account and at their own expense provide the necessary logging and lumbering outfit mills machinery and other plant necessary for such logging sawing and manufacturing operations and will manufacture such logs at such mills and not elsewhere into sawn and manufactured. lumber and last blocks and that all such sawing lumbering and logging outfit mills machinery and other plant and also any sawn and manufactured lumber and last blocks shall from time to time and at all times be kept on the reserved blocks at some place or places designated from time to time by the Nashwaak Company and that all such operations shall be carried on within the limits of said reserved blocks and no lumbering or logging outfit mills machinery or other plant or logs or sawn or manufactured lumber or last blocks shall be removed therefrom while any amount may be due or owing from the said Mobbs & Lewis to the Nashwaak Company.

*        *        *        *        *        *        *

8. This contract is not assignable or divisible and said Mobbs & Lewis shall not assign this contract or sub-let or sub-permit hereunder except to a Company formed by Mobbs and Lewis Limited to operate on said lands.

9. In the event of this contract being so assigned the said Mobbs & Lewis shall however continue liable and responsible to the Nashwaak Company for the faithful performance hereof.

The agreement between Messrs. Mobbs and Loewer was not in writing. It was consummated through the formation of the Mavis Last Block Plant, an operating company organized under the Canadian law and having its principal office at Toronto, Canada. This concern is variously denominated in the record as the Mavis Mills Block Co., Mavis Block Corporation Plant, Mavis Timber Co., and hereinafter will be referred to as the Mavis Company. The petitioner and Mobbs & Company purchased all the stock of the Mavis Company for some consideration not disclosed by the record. One share of such stock was issued to Loewer, the president of the petitioner to qualify him to serve as a director, and 899 shares were issued to him as trustee for the petitioner. Mobbs & Lewis, Ltd., received 1094 shares of such stock.

The books of the petitioner show advances beginning July, 1919, up to and including 1922, under the heading "Mavis Block Advances." At the end of 1920 the company's books show advances amounting to $64,816.94; at the end of 1921 the company's books show advances in a total amount of $100,055.54; and at the end of the year 1922 the company's books show additional advances of $7,023.71. These advances were made by the petitioner to the Mavis Company in the amounts above specified. They were used in 1920 by the Mavis Company in the construction and acquisition of saw mill machinery, buildings and other equipment installed by said company for the purposes of the timber contract above mentioned, and equalled about 45 per cent of the cost thereof. The remaining 55 per cent of such cost was advanced by Mobbs, of Mobbs & Lewis, Ltd.

In 1924 and prior to the expiration of the contract above mentioned, it was determined that the timber on the property was practically cut over. After some negotiation, and in 1924, Mobbs & Lewis, Ltd., paid the petitioner the sum of $30,000. In 1924 the amount of $30,000 was credited on the petitioner's books to the account of "Mavis Block Advances," hereinabove referred to. In the same year (1924) the balance of this account was charged off the company's books by a correcting entry charging off 20 per cent of the amount of the advances appearing on the books as of December 31, 1920; for the year 1921 by a correcting entry charging off 25 per cent of the advances made in 1921, to wit, $35,238.60, and 20 per cent of the amount of advances as of December 31, 1920, $64,816.94; for the year 1922 by a correcting entry charging off 33⅓ per cent of the advances made in 1922 ($7,023.71); 20 per cent of the advances made in 1920 ($64,816.94); and 25 per cent of the advances in 1921 ($35,238.60), and adjustments similar to these made in 1922 were made for the year 1923.

The company's books show in 1924 that by these correcting adjustments there remained a debit balance of advances amounting to $14,661.31 against which is credited the $30,000 received in 1924, hereinbefore referred to.

The petitioner maintained no leasehold account during the year in controversy or subsequently thereto, wherein said advances appearing in the Mavis Block account are set up, nor are such advances set up in the company's books as a capital charge to leasehold.

The maple and birch timber which formed the subject matter of the contract in question, was practically all cut and manufactured prior to the end of the year 1924 and the agreement was not renewed.

From some time in 1911 and up to the first of the year 1920, the petitioner advanced certain amounts of money to one E. R. Wash-

11340°—28——14

burn, who was engaged in the manufacture of lasts and last blocks at Franklinville, N. Y., with the understanding that such advances were anticipated payments for the products manufactured by Washburn. The credit balance of such advances at December 31, 1920, was $5,190.74. During the year 1920 the petitioner made many attempts to secure last blocks or cash in liquidation of such balance and was unable to make any collection on the account. Loewer made several trips to Franklinville and after investigation decided that the debt was worthless at December 31, 1920. The unpaid advances were carried as open accounts on the petitioner's books, further unsuccessful attempts being made to collect in 1921 and at December 31, 1924, they were charged off the books of the petitioner by a correcting entry as of December 31, 1920.

OPINION.

LANSDON : There are two questions involved in this proceeding. For convenience in treatment we shall consider them in reverse order from that in which they appear in the findings of fact, and dispose first of the claim for bad debts on account of money advanced to E. R. Washburn to aid the latter in the conduct of his business of manufacturing lasts at Franklinville, N. Y.

The record discloses that these advances were made between 1911 and 1920 with the intention that they should be repaid in last blocks, the product of the debtor's business. No payments of any kind were made on this account in the year 1920. Petitioner's president and manager visited the plant several times within the year, and became convinced that no collection could be made. The full amount of the debt, $5,190.74, was thereafter charged off the petitioner's books on December 31, 1924, by an adjusting entry as of December 31, 1920. It appears that this account was carried on the books of the petitioner for nearly four years after its worthlessness is alleged to have been ascertained and finally charged off by a so-called correcting entry as of the close of the taxable year. In these circumstances, we are unable to find that the debt was ascertained to be worthless and charged off in 1920.

Petitioner advanced to the Mavis Company between July, 1919, and December 31, 1920, $64,816.94 for the use of the latter in erecting necessary buildings and purchasing necessary machinery and equipment for the production of last blocks. All this was used during the year 1920 for such purposes. This was petitioner's 45 per cent of the whole amount used for these purposes during the year 1920. Mobbs & Lewis, Ltd., advanced its proportionate share of 55 per cent of the cost of such facilities. The petitioner claims that the full amount advanced by it was invested in plant facilities the useful life of which was limited to the five-year term of the timber-purchase

agreement, and that under the provisions of section 214 (a) (8) of the Revenue Act of 1918, it should be entitled to exhaust such investment ratably as deductions from its income for each of such five years.

The record does not disclose whether these so-called advances were payments for the stock of the Mavis Company issued to the petitioner, or loans to the Mavis Company on payment for a 45 per cent interest in the timber contract. The salvage value of the buildings and equipment at the end of the five-year term is not proved. We have no knowledge of whether the Mavis Company has been dissolved, or of the value of said company's assets at date of dissolution or of the value of the petitioner's interest therein. There is no testimony that all available raw material suitable for the manufacture of last blocks was exhausted at December 31, 1920. From the evidence we are unable to determine whether there was any proportional satisfaction of these so-called advances by reason of any exhaustion of the life of the contract under which the Mavis Company was operating.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LITTLETON, dissenting: I dissent from the decision on the second point. See *Electric Reduction Co.* v. *Lewellyn*, 11 Fed. (2d) 493, and *Appeal of Cornelius Lumber Co.*, 5 B. T. A. 215.